IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION

MDL DOCKET NO. 1804
ALL CASES

1:07 MD1804-TWT

ORDER

This is an MDL proceeding in which about 200 personal injury actions are consolidated for pretrial proceedings. It is before the Court on the Defendant Home Depot U.S.A., Inc.'s Motion for Summary Judgment on Plaintiffs' Claim of Negligent Recall by Home Depot U.S.A., Inc. [Doc. 1824], the Defendants' Motion to Exclude Expert Testimony of Catherine Downs [Doc. 1857], and the Defendants' Motion to Exclude the Affidavit of Catherine Downs [Doc. 2101]. For the reasons set forth below, the Defendants' motions are DENIED.

I. Background

This MDL proceeding arises out of lawsuits filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal ceramic tile grout in kitchens, bathrooms, and similar areas. The purported advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the

strain of using a brush and manually applying the sealant. The Plaintiffs say that the problems with Stand 'n Seal began when the manufacturer changed its chemical components. Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1] But from April to May 2005, and again in July 2005, the manufacturer of Stand 'n Seal switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS. The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal. By August 31, 2005, Stand 'n Seal with Flexipel was recalled.

As a result of their injuries, consumers all over the country filed lawsuits asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. On January 5, 2007, the Judicial Panel on Multidistrict Litigation transferred the federal lawsuits to this Court for consolidated pretrial proceedings. Among other claims, the Plaintiffs have asserted claims that Defendants negligently recalled Stand 'n Seal. To support their claims for negligent recall, the Plaintiffs intend to introduce expert testimony from Catherine

---

[1]Fluoropolymers are known for exceptional chemical resistance and high-temperature stability. The most commonly known fluoropolymer is probably the DuPont brand Teflon. Teflon is used in hundreds of products, including coating of non-stick frying pans.

Downs. The Defendant Home Depot U.S.A., Inc. now moves for summary judgment as to the claims for negligent recall by it. The Defendants also move to exclude an affidavit and expert testimony from Downs.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

Because the admissibility of an affidavit and expert testimony from Catherine Downs affects whether Home Depot is entitled to summary judgment, the Court will discuss the Defendants' motions to exclude before the motion for summary judgment.

A. The Affidavit

The Defendants move to exclude an affidavit from Catherine Downs. The affidavit was submitted by the Plaintiffs after the Defendants filed a motion to exclude her expert testimony. The Defendants say that the affidavit should be excluded because the affidavit violates the "sham affidavit" rule. Under the sham affidavit rule, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984). The Defendants bear a heavy burden to exclude testimony under the sham affidavit rule. For all of the statements that the Defendants say violate the sham affidavit rule, the Defendants have not shown that the questions were unambiguous, that the answers were clear, or that there is no explanation for any alleged contradiction. It is true that there are some discrepancies between the deposition of Downs and her affidavit. But those are simply "discrepancies which create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986). Therefore, Downs's affidavit should not be excluded under the sham affidavit rule.

The Defendants also say that the affidavit should be excluded because it

contains new expert opinions that were not disclosed in Downs's expert report or deposition. Under Rule 26 of the Federal Rules of Civil Procedure, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under [the expert witness rules]." Fed. R. Civ. P. 26(a). This disclosure must be accompanied by a written report, and the written report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(b)(i). The reason for the expert disclosure rule is "to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008).

After careful review of Downs's expert report, deposition testimony, and affidavit, her affidavit should not be excluded. Although the statements in Downs's affidavit are not identical to the statements in her expert report, they "[do] not differ substantially." Rowe Int'l Corp. v. Ecast, Inc., 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008). In her affidavit, Downs discusses whether the Defendants' conduct met "the standard of care for reasonably prudent manufacturers [and retailers] of consumer products." (Downs Aff. ¶ 3.) The Defendants say that, before her affidavit, Downs only discussed whether the Defendants met the requirements of the Consumer Product Safety Act, and that Downs has now expanded the scope of her expert testimony by

holding herself out as an industry standards expert. But Downs's deposition testimony and her expert report indicate that her opinions were never limited to the requirements of the Consumer Product Safety Act:

> Q. . . . What is your opinion as to when Home Depot [U.S.A., Inc.] should have filed a . . . report to CPSC [(Consumer Product Safety Commission)]?
> A. When Roanoke [Companies Group, Inc.] let you know that they had a problem and there were injuries, whenever that was, whenever they got in touch with you, and that they were going to file a report with CPSC, and that they were going to handle the recall, and this all probably took place in on telephone conversation or one e-mail or something like that. I am – I am speculating on that.
> But whenever they let Home Depot know that, then what most big retailers do is they pick up the phone, they call CPSC and say, hey, you are going to be getting a call. Or you may have already gotten a call from Roanoke, you know, we are the retailer for this product but they are going to handle the recall and just wanted to let you know that we'll do whatever you think is necessary of us.
> You are just covering your bases. You've made a contact with CPSC. They know who to call if they need to call, you know, for that particular recall. They have got a contact person. There is no requirement for this.
> Q. Okay. There's no requirement for this. But you say in your opinion as a CPSC expert that at a minimum Home Depot should have done that. So –
> A. That's my opinion?
> Q. This just an aspirational idea of yours, isn't it?
> A. Well, it's my experience.
>     MR. MAIBERGER: Object to form.
> A. Is that that's how most of the big retailers, what they would do.

(Downs Dep. at 309-11.)

> [T]here was much misinformation about the "in-store recall posters." It is true that CPSC requires that they post the recall information in one specific area. However, there are no prohibitions that the same sign

> could not also be posted where the product normally was sold. In retail outlets as large as Home Depot, multiple postings should have been made particularly if the product was offered for sale in multiple locations.
>
> . . . .
>
> There were also emails in evidence between various involved parties stating that Roanoke (and Home Depot) could not move forward with a recall until CPSC had given them the go ahead. This is absolutely false. As a matter of fact, a very high percentage of companies already have their recalls under way before they ever report to CPSC.

(Downs Aff., Ex. A., at 5.) It is true that, compared to her expert report, some of the statements in Downs's affidavit elaborate on industry standards. But some elaboration is allowed. See Emcore Corp. v. Optium Corp., Civ. A. No. 6-1202, 2008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) (allowing elaboration of "an opinion/issue previously addressed in [the expert's] report"); Forest Labs., Inc. v. Ivax Pharms., Inc., 237 F.R.D. 106, 113 (D. Del. 2006) (same).

In her affidavit, Downs also cites to the CPSC's Handbook for Manufacturing Safe Consumer Products. (Downs Aff., Ex. B.) The Defendants say that this is the first time that Downs has cited to this source. But, during her deposition, Downs indicated that she had relied on materials from the CPSC website, which includes the Handbook:

> Q. Any other documents that you consider authoritative in your field?
>     MR. MAIBERGER: Objection to form.
> Q. Again I'm talking about periodicals, texts, that kind of thing?
>     MR. MAIBERGER: Same, still objection to form.
> A. See, most of this stuff is in my head and not – for me to say, well, it

comes specifically from there, specifically from this, that and the other, I can't do it. The CPSC web site, you know, has most of the authoritative documents on it.
Q. So the web site would also be authoritative in your opinion?
A. Yes.

(Downs Dep. at 107.) In any event, Downs does not rely on the Handbook to provide new opinions. Instead, Downs cites to this source to support her previously disclosed opinions.[2] The Defendants object to other parts of Downs's affidavit, but those objections do not require further discussion. Those objections ignore that some elaboration by experts is allowed and that an expert's statements in an affidavit do not have to be identical to statements in the expert's initial report. Therefore, Downs's affidavit should not be excluded.

B. The Expert Testimony

The Defendants also move to exclude expert testimony from Catherine Downs. The Defendants say that her testimony should be excluded because it does not meet the requirements for admissible expert testimony. Rule 702 provides that:

> [A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

---

[2]The Defendants also say that Downs should not be able to cite to the Handbook for Manufacturing Safer Consumer Products because it was published after Stand 'n Seal was recalled. But there is no suggestion that the Handbook presents new standards of care that did not exist at the time of the Defendants' alleged negligence.

> witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993). The reason for these requirements is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999). The party offering testimony from an expert must show by a preponderance of evidence that the testimony is admissible. <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999).

The Plaintiffs offer the testimony of Downs as an expert in product recalls and product defect notices. Downs was asked to evaluate the product recall and notice efforts of Roanoke and Home Depot after the outbreak of injuries associated with Stand 'n Seal. To conduct her evaluation, Downs reviewed correspondence between the Defendants and the CPSC, numerous depositions and exhibits from the Defendants' representatives, press releases and internal communications from the Defendants and the CPSC, and medical reports from CHEMTREC (Chemical Transportation Emergency Center). (Downs Aff., Ex. A, at 1-2.) Downs's opinions are that Roanoke's and Home Depot's notices to the CPSC were too late and incomplete, Roanoke failed to adequately investigate the cause of the injuries, Stand 'n Seal should have been removed immediately by Home Depot employees, Home

Depot should have used better advertising and in-store postings to facilitate the recall, and Home Depot did not properly brief its employees about the nature of the recall. (Downs Aff., Ex. A, at 2-7.)

Downs's expert testimony is admissible. Downs is qualified to testify about the product recall and notice efforts of Roanoke and Home Depot. Downs has spent most of her professional life working at the CPSC. (Downs Aff., Ex. A, at 1.) From 1984 to 1989, Downs was a Compliance Officer at the CPSC. (Id.) As a Compliance Officer, Downs worked with companies to facilitate compliance with the product recall and notice requirements of the Consumer Product Safety Act and CPSC regulations. (Downs Aff. ¶ 3.) From 1990 to 1999, Downs was Deputy Director for the CPSC's Section 15(b) Recalls Division.[3] (Downs Aff., Ex. A, at 1.) While Downs was Deputy Director, Downs "wrote the training manual for Compliance Officers that includes the duties of a Compliance Officer with regard to timeliness investigations." (Downs Aff. ¶ 17.) From 1999 to 2004, Downs was a Program Manager for the CPSC's National Electronic Injury Surveillance System. (Downs Aff., Ex. A, at 1.) The National Electronic Injury Surveillance System collects information from designated hospitals for every emergency visit involving an injury associated with

---

[3]Section 15(b) refers to Section 15(b) of the Consumer Product Safety Act. See 15 U.S.C. § 2064(b).

consumer products.  See Consumer Product Safety Commission, NEISS Home, http://www.cpsc.gov/LIBRARY/neiss.html (last visited June 2, 2009).  Over the course of her time at the CPSC, Downs worked with hundreds of different companies on product recalls and notice efforts.  (Downs Aff. ¶ 3.)

The Defendants say that Downs is not qualified because Compliance Officers only provide factual assistance to the legal division of the CPSC.  But that factual assistance is similar to the expert testimony that Downs intends to provide in this case. "Compliance Officers are required to analyze the factual information regarding what the companies knew, when they knew it, when they notified the CPSC, and whether they attempted to conduct a silent recall or hide known problems." (Downs Aff. ¶ 17.) That the legal division of the CPSC had the final say over whether to prosecute a company for noncompliance does not undermine Downs's qualifications.  The Defendants also say that Downs is not qualified to testify about industry standards because her experience is limited to whether companies complied with the Consumer Product Safety Act.  But Downs's experience is not limited in this way. By working with companies to facilitate compliance with the Consumer Product Safety Act and CPSC regulations, Downs was necessarily exposed to the product recall and notice practices of hundreds of different companies.  This is sufficient experience to qualify Downs as an expert.

Downs's expert testimony is based on sufficient facts and data to be admissible. Downs came to her opinions after reviewing correspondence between the Defendants and the CPSC, numerous depositions and exhibits from the Defendants' representatives, press releases and internal communications from the Defendants and the CPSC, and emergency reports from CHEMTREC. The Defendants do not dispute that Downs's expert testimony is based on sufficient facts and data.

Downs's expert testimony is also the product of reliable principles and methods, and she has reliably applied those principles and methods to the facts of this case. The primary method used by Downs is the application of her experience to evaluate the conduct of the Defendants. See Fed. R. Evid. 702 advisory committee's note (2000) ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). As she explains:

> My opinions in this case are based primarily on my personal experience and knowledge of how companies conduct recalls and notify the CPSC and consumers regarding products that could cause injuries. My opinions, in other words, are not based on science, but rather, on my knowledge and experience with manufacturers, distributors, and retailers of consumer products with regard to consumer product recalls. My opinions in this case are based on the same method of analysis I used as a Compliance Officer and as Deputy Director for CPSC's Section 15(b) Recalls Division to determine whether companies' proposed recall plans were adequate and whether the companies effectively carried out their recall plans.

(Downs Aff. ¶ 15.) The Defendants say that Downs's experience is not a sufficient

basis for her testimony, but the Defendants' arguments on this issue merely restate their position that Downs is not qualified.

Based on some statements that Downs made during her deposition, the Defendants say that Downs's testimony is not relevant to this case. But many of the Defendants' arguments overstate what Downs said during her deposition. For example, one of Downs's opinions is that Roanoke waited too long before filing a notice with the CPSC about the injuries associated with Stand 'n Seal. To support her opinion, Downs relies on four CHEMTREC medical reports that were filed between May 18 and May 20, 2005. The Defendants say that, during her deposition, Downs admitted that these four reports were inconclusive:

> Q. You can't state whether medically these four incidents demonstrate an unmistakable pattern, correct?
> A. Medically?
>     MR. MAIBERGER: Object to form.
> A. I can't make any kind of a medical statement.
> Q. In fact if you look at the four complaints, there's no way to know what was injured in any of these four complaints, correct?
>     MR. MAIBERGER: Objection to form.
> A. It was the inhalation, I would say.
>     MR. MAIBERGER: Hang on a second. Your microphone --
> A. If I were a company reviewing those, and I had never had another complaint before on this product, and I saw, one, coughing fit; two, inhalation; three, inhalation; four, inhalation; I would stop dead in my tracks and say, hey, what's going on here.
> Q. I move to strike as being nonresponsive. Ma'am the question stands. You cannot state that these four complaints medically set forth an unmistakable pattern, correct?
> A. I can't make any –

> MR. MAIBERGER: Objection to form. Asked and answered.
> A – comments on medically. That's – I can't make a medical comment.

(Downs Dep. at 208-09.) But it is clear that Downs did not abandon her opinion. While Downs does not hold the medical opinion that the four reports established an unmistakable pattern, she does believe that the reports should have prompted Roanoke to immediately file a notice with the CPSC about the injuries associated with Stand 'n Seal. (Downs Aff. ¶ 18.) The Defendants' other arguments for why Downs's testimony is not relevant wrongly assume that Downs only intends to testify about whether the Defendants met the requirements of the Consumer Product Safety Act. For example, the Defendants say that "[Downs] acknowledges that Roanoke's corrective plan to remove the affected cans from the shelves was submitted and approved by the CPSC." (Defs.' Memorandum of Law in Supp. of Their Joint Mot. to Exclude Expert Testimony of Catherine Downs, at 23.) But, as discussed above, Downs's opinions were never limited to the requirements of the Consumer Product Safety Act. And, as Downs explains, "[a]lthough the [Consumer Product Safety Act] and CPSC guidelines provide minimum standards, the standard of care for reasonably prudent manufacturers [and retailers] of consumer products often exceeds these minimal governmental requirements." (Downs Aff. ¶ 3.) Therefore, Downs's expert testimony should not be excluded.

    C.    <u>Negligent Recall</u>

Home Depot moves for summary judgment as to the claims for negligent recall by Home Depot. But all of Home Depot's arguments for summary judgment simply restate the Defendants' arguments that Downs's affidavit contains new opinions and that her expert testimony is unreliable. As discussed above, Downs's affidavit does not contain new opinions, and she has provided reliable expert testimony that Roanoke and Home Depot negligently recalled Stand 'n Seal. Therefore, Home Depot is not entitled to summary judgment as to the claims for negligent recall by Home Depot.

IV. Conclusion

For the reasons stated above, the Defendant Home Depot U.S.A., Inc.'s Motion for Summary Judgment on Plaintiffs' Claim of Negligent Recall by Home Depot U.S.A., Inc. [Doc. 1824], the Defendants' Motion to Exclude Expert Testimony of Catherine Downs [Doc. 1857], and the Defendants' Motion to Exclude the Affidavit of Catherine Downs [Doc. 2101] are DENIED.

SO ORDERED, this 22 day of June, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge